UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARREN GREEN (#438161)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 12-749-JJB-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 25, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARREN GREEN (#438161)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 12-749-JJB-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Darren Green.

For the reasons which follow, the petition should be denied.

## I. State Court Procedural History

### A. Trial Court

Petitioner was found guilty of one count second degree murder in the Eighteenth Judicial District Court for the Parish of Iberville, Louisiana on November 10, 2003. Petitioner was sentenced to a term of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.

### B. Direct Appeal

Petitioner appealed asserting a single ground for relief:

(1) There was insufficient evidence to support the petitioner's second degree murder conviction.

Petitioner filed a *pro se* Supplemental Brief asserting two additional assignments of error:

(2) There was insufficient evidence to support his second degree murder conviction;

(3) His trial was rendered fundamentally unfair when the trial court denied the petitioner funds for the assistance of a DNA expert and funds for an investigator.

The First Circuit Court of Appeal affirmed the petitioner's conviction and sentence. *State of Louisiana v. Darren Green*, 2004-0447 (La. App. 1st Cir. 12/30/04), 890 So.2d 36 (Table).[1] Petitioner sought supervisory review by the Louisiana Supreme Court, which denied review on June 3, 2005. *State of Louisiana v. Darren Green*, 903 So.2d 455, 2005-0611 (La. 6/3/05).

## C. Post-Conviction Relief

Petitioner signed an application for post-conviction relief ("PCRA") on May 10, 2006, and it was filed on May 16, 2006.[2] Petitioner asserted the following grounds for relief:

1.  He was denied effective assistance of counsel when trial counsel:
    (a) failed to properly present law and facts regarding venue;
    (b) failed to investigate calls made to Crimestoppers regarding the murder, the testimony of several witnesses and the green blanket introduced into evidence;
    (c) entered into a stipulation without consulting with the petitioner on important decisions;
    (d) failed to call witnesses on behalf of the petitioner; and,
    (e) failed to secure *Ake* funds.

---

[1] State Court Record, Vol. 7.

[2] State Court Record, Vol. 5.

2

> 2. He was denied effective assistance of counsel on appeal.

Petitioner filed a supplemental PCRA[3] in which he asserted two additional grounds for relief:

> 3. There was insufficient evidence to support his second degree murder conviction.

> 4. The trial court erred in denying his motion for court approval for experts and investigation.

Counsel subsequently enrolled for the petitioner on July 2, 2007 and on April 24, 2009, filed a supplemental brief in support of the PCRA. In that brief, a single additional ground for relief was asserted:

> 5. Petitioner was denied the right to testify at trial under *State v. Hampton*, 818 So.2d 720 (La. 2002).[4]

The trial court denied the PCRA on December 14, 2011.[5]

Petitioner sought review by the Louisiana First Circuit Court of Appeal, which denied review. *State ex rel. Darren Green v. State of Louisiana*, 2012-1065 (La. App. 1st Cir. 9/28/12), 98 So.3d 830.

Petitioner sought review by the Louisiana Supreme Court, which

---

[3] Record document number 1-5, pp. 41-53.

[4] A copy of the second supplemental PCRA could not be located in the State Court Record and was not attached as an exhibit to the petitioner's federal habeas corpus application. However, there is no dispute that the claim was exhausted, nor could there be since the evidentiary hearing held on the petitioner's PCRA focused on this claim.

[5] State Court Record, Vol. 6.

also denied review. *State ex rel. Darren Green v. State of Louisiana,* 2012-1054 (La. 10/8/12), 98 So.3d 862.

**D. Federal Habeas Corpus Application**

Petitioner filed his federal habeas corpus application on November 28, 2012.

Petitioner asserted the following grounds for relief:

Claim #1. There was insufficient evidence to support his second degree murder conviction.

Claim #2. He was denied effective assistance of counsel.

Claim #3. He was denied the right to testify in his own defense at trial.

## II. Applicable Law and Analysis

### A. Standard of Review

Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

> determination of a factual issue made by a State court
> shall be presumed to be correct. The applicant shall
> have the burden of rebutting the presumption of
> correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual determination. It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence." Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law." When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case. The first clause of subsection (d)(1) refers to questions of law. When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id.*

Review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id.*, at 1400. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003). *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d). *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[6]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the

---

[6] The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 1519 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120 S.Ct. at 1523.

## Claim #1: Insufficient Evidence

In Claim #1, the petitioner argued that the evidence was not sufficient to support his second degree murder conviction.

The standard for gauging the sufficiency of the evidence to support a conviction is well established. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original). Even if state law would impose a more demanding standard of proof, only the *Jackson* standard must be satisfied to maintain the constitutionality of a conviction. *Gilley v. Collins*, 968 F.2d 465 (5th Cir. 1992); *Schrader v. Whitley*, 904 F. 2d 282, 284 (5th Cir.), *cert. denied*, 498 U.S. 903, 111 S.Ct. 265 (1990). The evidence may be found sufficient to support a conviction even though the facts also support one or more

reasonable hypotheses consistent with the defendant's claim of innocence. *Gilley*, *supra*; *Gibson v. Collins*, 497 F.2d 780, 783 (5th Cir. 1991). The *Jackson* standard applies to both bench and jury trials. *Jackson*, 433 U.S. at 309, 311 and n. 3, 317 n. 8, 99 S.Ct. at 2783, 2785 and n. 3, 2788 and n. 8.

The substantive elements which the state must prove in order to convict a defendant are determined by state law. At the time of the petitioner's offense, second degree murder included "the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm." LSA-R.S. 14:30.1A(1).

A review of the trial transcript confirmed that the Louisiana First Circuit Court of Appeal provided a fair and accurate summary of the evidence in its opinion. *Green,* at 2-9. That summary does not need to be repeated in this report. The appellate court reached the following conclusion regarding the sufficiency of the evidence supporting the petitioner's second degree murder conviction.

> A thorough review of the record indicates the evidence presented herein, viewed in the light most favorable to the state, proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant's identity as the perpetrator of that offense. Evaluating the evidence in the light most favorable to the state, we do not find the defendant's hypothesis that someone other than the defendant strangled the victim to death sufficiently reasonable that a rational juror could not have found proof of guilty beyond a reasonable doubt. Moreover, based upon the defendant's untruthfulness during the investigation of the offense, it would not have been unreasonable for

> the jury to find he was not credible, and thus,
> completely reject his account of the victim leaving with
> an "old drug friend" shortly before her murder.

*Green,* at 12.

A careful review of all the evidence, viewed in the light most favorable to the prosecution as required by *Jackson*, shows that there was sufficient evidence to support the petitioner's conviction. Petitioner has not carried his burden to rebut the presumption of the correctness of the state court's determination of his insufficiency of the evidence claim. Petitioner has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or that it was based on an unreasonable determination of the facts in light of the evidence presented at the trial. Petitioner's insufficiency of the evidence claim has no merit.

### Claim #2: Ineffective Assistance of Counsel

In Claim #2 the petitioner argued that he was denied effective assistance of counsel at trial. Specifically, the petitioner argued that trial counsel was ineffective when: (1) he failed to investigate calls made to Crimestoppers following the murder; (2) he failed to investigate whether the petitioner worked at job sites which required him to pass the location where the victim's body was found; (3) he failed to investigate the FBI Examination Report and use it to impeach Mamie Moffett; (4) he stipulated to dropping the

defense's allegation of fabrication of evidence against the prosecution without the petitioner's consent; and (5) he failed to investigate, interview and call the petitioner's father, mother, daughter, ex-wife, and current wife as witnesses at trial.

Section 2254(d) applies to the petitioner's ineffective assistance of counsel claim because that claim was adjudicated on the merits in state-court proceedings.[7] Section 2254(d) applies even where, as in the petitioner's case, there was a summary denial. *Cullen v. Pinholster*, 131 S.Ct. at 1402. In these circumstances, the petitioner can satisfy the "unreasonable application" prong of § 2254(d)(1) only by showing that "there was no reasonable basis" for the Louisiana Supreme Court's decision.

Petitioner did not specifically argue that the state court's determination of his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, namely *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at

---

[7] *State of Louisiana ex. rel. Darren Green v. State of Louisiana*, 2012-1065 (La. App. 1st Cir. 9/28/12), 98 So.3d 830; *State ex rel. Darren Green v. State of Louisiana*, 2012-1054 (La. 10/8/12), 98 So.3d 862.

2064.    To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064.    To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983).    "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; that probability requires a "substantial," not just a "conceivable," likelihood of a different result, *Harrington v. Richter*, ____ U.S. ____,___, 131 S.Ct. 770, 792 (2011).

Habeas review of an ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112, 129 S.Ct. 1411 (2009), requiring a "highly deferential" look at counsel's performance, *Strickland, supra*, at 689, 104 S.Ct. at 2065, through § 2254(d)'s "deferential lens," *Mirzayance, supra*, at 121, n. 2, 1419 n. 2.    "In assessing the reasonableness of an attorney's investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate

further." *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S.Ct. 2527, 2538 (2003). "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made and by giving a heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 381, 125 S.Ct. 2456, 2462 (2005) (internal quotation marks and citation omitted).

In the first three components of his ineffective assistance of counsel claim the petitioner argued that counsel was ineffective when he failed to investigate Crimestoppers calls, the location of the petitioner's job sites in relation to the location where the victim's body was discovered, and the FBI Examination Report of the blanket discovered wrapped around the victim's head.

Petitioner argued that trial counsel was ineffective for failing to investigate the Crimestoppers calls. The record evidence showed that trial counsel received notice of the Crimestoppers calls on or before October 9, 2002.[8] In addition, the State filed a Notice of Supplemental Filing of Discovery Documents into the Record on November 20, 2002.[9] Among the documents included in the discovery was a Crimestoppers tip regarding two anonymous calls identifying a man who reportedly had

---

[8] State Court Record, Vol. 2, p. 657.

[9] *Id*. at Vol. 3, pp. 719-723.

12

an affair with the victim and assaulted her.[10]

Contrary to the petitioner's assertion, the record evidence showed that trial counsel filed a Motion to Compel Production of Notes, Synopsis and Crimestoppers Videos.[11] It is abundantly clear that counsel did investigate the anonymous calls. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

Petitioner argued that trial counsel was ineffective for failing to investigate the location of the petitioner's job sites in relation to the location where the victim's body was discovered. Buck Jones, the victim's father and the petitioner's father-in-law and employer, testified at trial that the petitioner had previously worked at job sites along the route where the victim's body was found.[12] Petitioner asserted that David Doiron was a co-worker who would have testified that the petitioner did not work at the job sites near the location where the victim's body was found. Petitioner argued that Doiron's testimony could have been used to impeach Buck Jones, and therefore trial counsel was ineffective when he failed to call Doiron as a witness.

The record evidence showed that at the evidentiary hearing held on the petitioner's PCRA, the petitioner's trial counsel,

---

[10] *Id.*

[11] *Id.* at 775-777.

[12] *Id.* at Vol. 4, pp. 1380-1381, 1390-1398, 1404-1405.

Thomas D'Amico, testified that he had an investigator interview the petitioner's co-worker as a possible witness based on the petitioner's assertion that the co-worker would say that they had never worked in that area.[13] D'Amico testified that the co-worker told the investigator he thought that he and the petitioner had worked in that area, and therefore D'Amico concluded that the co-worker's testimony would be harmful to the defense.[14]

The record evidence supports finding that trial counsel did investigate the petitioner's assertion that he did not work in the area where the victim's body was found. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

Petitioner argued that trial counsel was ineffective when he failed to investigate the FBI Examination Report of the blanket discovered wrapped around the victim's head. The record evidence showed that at the evidentiary hearing held on the petitioner's PCRA, D'Amico testified that the defense argument was that the people who identified the blanket did not do so until two and one half years after the murder.[15] D'Amico testified that because the DNA and FBI forensic information showed that the blanket did not come from the petitioner's trailer, he felt that was the best

---

[13] *Id.* at Vol. 6, PCRA hearing transcript, p. 22.

[14] *Id.*

[15] *Id.* at 20.

evidence in the case about the blanket.[16]

Trial counsel's failure to further pursue investigation into the green blanket was a matter of reasonable trial strategy and not ineffective assistance of counsel. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

Petitioner argued that trial counsel was ineffective when he stipulated to dropping the defense's allegation of fabrication of evidence against the prosecution without the petitioner's consent. The record evidence showed that during the testimony of Buck Jones[17] trial counsel questioned Jones about whether the prosecutor told him, "We need new blood" and "We have to put Darren in that area."[18] Jones testified that he did discuss it with the prosecutor but could not recall exactly what was said.[19] After the jury recessed for lunch, the trial judge noted that there had been an inference on the record that evidence had been fabricated and advised the parties that he would conduct a hearing on the matter at the close of the State's case.[20]

At that hearing the petitioner's wife, Sharon Green, and Paul

---

[16] *Id.*

[17] *Id.* at Vol. 4, pp. 1378-1406.

[18] *Id.* at 1392.

[19] *Id.*

[20] *Id.* at 1438-1439.

LeBlanc, the former prosecutor, testified.[21] Following the hearing a bench conference was held during which a stipulation was apparently reached.[22] The record evidence showed that in the presence of the jury the petitioner's trial counsel advised the jury that the parties stipulated that during the questioning of Buck Jones the defense did not mean to imply that the prosecutor was attempting to suggest the fabrication of evidence.[23]

First, the evidence introduced at the hearing did not support a finding that the prosecutor was attempting to fabricate evidence. Second, even assuming that trial counsel was deficient for failing to consult with the petitioner before entering into the stipulation, the petitioner failed to show that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

Petitioner argued that trial counsel was ineffective when he failed to investigate, interview and call the petitioner's father, mother, daughter, ex-wife, and current wife as witnesses. Petitioner argued that his father would have testified that the petitioner scratched his forehead while working on his father's truck, his step-mother would have testified that trial counsel did

---

[21] *Id.* at 1440-1453.

[22] *Id.* at 1453.

[23] *Id.* at 1454-1455.

16

not believe anything she said and called her a liar, his wife would have testified that the prosecutor suborned perjury, his mother-in-law would have testified that she overheard the petitioner tell trial counsel that he opposed the stipulation regarding the fabrication of evidence, his sister would have testified that the victim was happily married to the petitioner, his daughter would have testified that the blanket was never in their home, and David Doiron would have testified that the petitioner did not work in the area where the victim's body was discovered.[24]

The record evidence showed that at the evidentiary held on the petitioner's PCRA, D'Amico testified that he spoke to the petitioner's mother and determined that she offered "little or no value to the case" and as a result did not call her as a witness.[25] In addition, D'Amico testified that he reviewed a taped statement obtained from one of the petitioner's children which was inconsistent with statements made to the police.[26] D'Amico testified that her testimony was about incidents which supposedly happened afterwards and he did not see any real value in it.[27]

Petitioner has not shown that trial counsel was deficient for failing to call the petitioner's relatives as witnesses. Even

---

[24] Record document number 8, pp. 7-8.

[25] State Court Record, Vol. 6, PCRA hearing transcript, p. 19.

[26] *Id.*

[27] *Id.* at 19-20.

assuming that trial counsel was deficient for failing to call the plaintiff's relatives as witnesses, the petitioner failed to show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

There is no basis upon which to conclude that there is a reasonable probability that, but for the claimed errors by trial counsel alleged in the first through fifth components of the petitioner's ineffective assistance of counsel claim, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. These aspects of the petitioner's ineffective assistance of counsel claim are without merit.

### Claim #3: Denial of Right to Testify

In Claim #3 the petitioner argued that he was denied the right to testify at trial.

In his counseled PCRA, the petitioner argued that his trial counsel interfered with his right to testify at trial. The trial court conducted an evidentiary hearing on the petitioner's right to testify claim.[28] After conducting an evidentiary hearing on that issue, the court denied the petitioner relief on his Louisiana right-to-testify claim, concluding that he failed to make the

---

[28] *Id*. at 1-87.

showing required under *State v. Hampton*, 818 So.2d 720 (La. 2002).[29]
The Louisiana Court of Appeal for the First Circuit and the
Louisiana Supreme Court denied supervisory review.

In his federal habeas petition, the petitioner re-asserted his
right-to-testify claim in the context of *State v. Hampton*.

Claims that counsel unconstitutionally interfered with the
right to testify are reviewed under the two-prong standard for
ineffective assistance of counsel set out in *Strickland v.
Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). *Bower v.
Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007). To prevail under
*Strickland*, a petitioner must establish that his counsel's
performance was deficient, and the deficient performance prejudiced
his defense. *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir.
2002). It is deficient performance as a matter of law for defense
counsel "to override the ultimate decision of a defendant to
testify contrary to his advice." *Id*. Conversely, "when the record
is simply that the defendant knew of his right to testify and
wanted to do so but counsel was opposed, [and the] defendant
acquiesced in his lawyer's advice, ... the only inquiry is whether
that advice was sound trial strategy." *Id*. at 453-54.

In contrast, in *State v. Hampton*, 818 So.2d 720 (La. 2002),
the Louisiana Supreme Court held that, under state law, a

---

[29] State Court Record, Vol. 6, Judgment on Petitioner[']s Application for Post Conviction Relief.

defendant's right to testify is so fundamental a right that it is
not amenable to a harmless error/prejudice analysis like that
utilized in *Strickland*.  *Hampton*, at 727 (holding that the denial
of a criminal defendant's right to testify, after he unequivocally
makes known his desire to do so, simply cannot be amenable to a
harmless error analysis).[30]   Therefore, the standard for proving
ineffective assistance of counsel based upon the denial of a
defendant's right to testify on his own behalf is different under
Louisiana state law than under federal law.  Specifically, under
state law, a showing of prejudice or harmful error resulting from
the failure to testify is not required.  Petitioner's argument on
this claim applied the facts of the case only to the more favorable
Louisiana standard.[31]

A federal habeas court may grant relief when the petitioner is
held in custody pursuant to a judgment of a state court only on the
ground that he is in custody in violation of the Constitution or
laws or treaties of the United States.   28 U.S.C. § 2254(a).
Federal courts will not review a state court's interpretation of

---

[30] Under *Hampton*, a defendant's silence at trial creates a
presumption that he voluntarily waived the right to testify, which
can be rebutted by (1) alleging specific facts from which the court
could reasonably find that trial counsel told the defendant that he
was legally forbidden to testify or otherwise compelled him to
remain silent, and (2) demonstrating form the record that those
specific factual allegations would be credible.  818 So.2d at 729-
30.

[31] Record document number 1-1, supporting memorandum, pp. 24-
27.

its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986). Insofar as Claim #3 rests on the proper interpretation and application of state jurisprudence, this is an issue not within the scope of federal habeas corpus.

Nor does the testimony at the PCRA evidentiary hearing cited by the petitioner support Claim #3 under the *Strickland* standard.[32]

Sharon Green testified about a conversation that occurred about a week before the trial at D'Amico's office. After the petitioner asked D'Amico, "Are you going to let me testify?", and he responded, "No, no, no, no. You talk way too much," the petitioner stated, "Well, I don't know if I'm comfortable with that because I think I need to testify on my behalf." Green testified that after the meeting she said to the petitioner, "Well, there's nothing we can do," to which the petitioner replied, "I know. There's nothing I can do, so I'm just going to -- I'll just go with what he said."[33]

Tammy Ferguson testified that during the course of the trial she, the petitioner and other family members met with D'Amico at his office. Toward the end of the meeting the petitioner asked why he could not testify. In response D'Amico said, "Because you

---

[32] Record document number 1-1, pp. 26-27.

[33] State Court Record, Vol. 6, PCRA hearing transcript, pp. 50-51.

babble," and the petitioner remarked, "I don't understand. I don't have anything to hide." Ferguson testified that this exchange did not escalate into argument; the petitioner was just agitated.[34]

Betty Denicola testified that during the trial itself she overheard the petitioner state to D'Amico, "I want to get on the stand. I want to testify in my defense." However, she did not hear D'Amico's reply. She testified that the petitioner seemed upset, but she also testified that she was speculating about why the petitioner was upset.[35]

Regarding the pre-trial meeting at D'Amico's office, the petitioner testified that after he brought up the subject of testifying, D'Amico told him, "No, you talk too much." When asked whether he thought it was his decision or D'Amico's decision whether the petitioner would testify, the petitioner stated he thought it was D'Amico's decision because he paid counsel to represent him. Regarding discussions with D'Amico during the trial, the petitioner initially said he did not have any discussions, but then immediately stated that D'Amico again said the petitioner would not testify.[36]

D'Amico testified that he and the petitioner discussed whether the petitioner would testify, and they made a strategic decision

---

[34] *Id.* at 59.

[35] *Id.* at 80, 82.

[36] *Id.* at 64-65.

that he would not.  Testifying would not be to the petitioner's benefit because it would subject him to cross examination and would open up the possibility of the state calling rebuttal witnesses. D'Amico testified that he never tells a client that the client cannot testify since that is not the law, and he did not do so in this case.  He recommended that the petitioner not testify, and the petitioner made the decision.  D'Amico did not recall telling the petitioner he could not testify because he talked too much.[37]

A careful review of the record supports finding that the petitioner has not overcome the presumption of correctness by showing that the trial court's decision on this claim was based on an unreasonable determination of the facts in light of the evidence presented in PCRA hearing.[38]  The PCRA testimony amply supports the trial court's implicit finding that the petitioner knew of his right to testify, trial counsel was opposed, and the petitioner acquiesced.  There is no evidence showing that not calling the petitioner as a witness was not a sound trial strategy.  Moreover, there was no PCRA hearing testimony from the petitioner or any other witness which could support finding that the petitioner was prejudiced by him not testifying.  Neither at the PCRA hearing nor in his § 2554 petition did the petitioner describe what testimony

---

[37] *Id.* at 13-16.

[38] See State Court Record, Vol. 6, Judgment on Petitioner['] Application for Post Conviction Relief

he would have given at the trial or how it would have resulted in a different outcome. This aspect of the petitioner's Claim #3, evaluated under the *Strickland* standard, has no merit.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Darren Green be denied.

It is further recommended that a certificate of appealability be denied for the reasons set forth herein.

Baton Rouge, Louisiana, August 25, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE